**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Justin Bogus, | No. CV-18-03042-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| GEICO Indemnity Company, et al., | |
| Defendants. | |

Pending before the Court are Plaintiff Justin Bogus ("Plaintiff")'s Motion for Partial Summary Judgment (Doc. 70) and Motion to Certify Questions of Law to the Arizona Supreme Court (Doc. 72) and Defendant GEICO Indemnity Company ("GEICO")'s Motion for Partial Summary Judgment (Doc. 73)[1]. Plaintiff's Motions are denied and GEICO's Motion is granted.[2]

## BACKGROUND

On July 15, 2017, Plaintiff called GEICO seeking insurance coverage for his 2014 Harley Davidson motorcycle and spoke with Defendant Danielle Trach, a licensed insurance producer. The contents of that conversation are disputed; however, the parties agree that Trach ultimately sold Plaintiff a policy providing bodily injury (BI) liability

---

[1] Defendants GEICO and Danielle and Zachary Trach bring this Motion collectively. However, as the Motion relates only to the claim asserted against GEICO, the Trachs are not proper parties.

[2] The parties have requested oral argument. Those requests are denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

limits of $300,000 per person, subject to an aggregate limit of $300,000 per collision, and uninsured (UM) and underinsured (UIM) motorist coverage in the amount of $15,000 per person, subject to an aggregate limit of $30,000 per collision. Plaintiff asserts that, had he realized the policy included mismatched BI and UM/UIM coverage, "he would have never purchased only $15,000 in uninsured and underinsured motorist coverage" but instead "would have purchased as much uninsured and underinsured motorist coverage as GEICO would allow when purchasing the $300,000 in bodily injury coverage." (Doc. 71 at 4.)

On November 30, 2017, Plaintiff was riding his motorcycle when another driver failed to yield and drove her car into Plaintiff, causing him serious injuries. As a result of the collision, Plaintiff incurred more than $1,000,000 in medical expenses. The insurance policy of the at-fault driver was not sufficient to cover Plaintiff's medical expenses.

Plaintiff's Second Amended Complaint, filed December 21, 2018, alleges negligence against Trach and vicarious liability and negligent training and supervision against GEICO. On January 31, 2020, Plaintiff filed a Motion for Partial Summary Judgment on his claim against Trach and a Motion to Certify two questions to the Arizona Supreme Court. GEICO filed a Motion for Partial Summary Judgment on the negligent training and supervision claim.

## DISCUSSION

### I.  Legal Standard

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Parties opposing summary judgment are required to "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). A district court has no independent duty "to scour the record in search of a genuine issue of triable fact[.]" *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

## II.  Analysis

To establish a claim for negligence, at issue in both Plaintiff's and GEICO's Motions, "a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Casey*, 150 P.3d 228, 230 (Ariz. 2017).

### A.  Plaintiff's Motion for Partial Summary Judgment and Motion to Certify Questions of Law to the Arizona Supreme Court

In Arizona, an insurance producer owes a duty to "exercise reasonable care, skill and diligence in carrying out the agent's duties in procuring insurance." *Darner Motors Sales, Inc. v. Universal Underwriting Ins. Co.*, 140 Ariz. 383, 397, 682 P.2d 388, 402 (1984). Plaintiff moves for summary judgment on his negligence claim against Trach, asserting that it was Trach's duty under the version of Arizona's Uninsured/Underinsured Motorist Act ("UMA") in place at the time of the sale[3] to confirm Plaintiff's selection of mismatched BI and UM/UIM coverage through a Department of Insurance approved form (DOI form), and that her failure to do so constitutes a breach.[4] The parties do not dispute

---

[3] The UMA was amended in 2019. The version of the Act at issue here was effective from August 6, 2016 to August 26, 2019.

[4] To the extent Plaintiff seeks summary judgment as to Trach's breach of her duty to "offer[] and explain[] the nature and applicability of underinsured motorist coverage," (Doc. 70 at 11), this is a disputed question of material fact not appropriate for resolution at this stage.

that Trach did not confirm Plaintiff's selection of mismatched coverage through a DOI form. The dispositive question at this stage is whether the UMA imposed on her a duty to do so.[5]

Arizona state courts "presume that the legislature has said what it means and apply the text of the statute as written." *State v. Nelson*, 90 P.3d 206, 209 (Ariz. Ct. App. 2004). If the statutory language is ambiguous, however, courts "consider the statute's context; its language, subject matter, and historical background; its effects and consequences; and its spirit and purpose." *Indus. Comm'n of Arizona v. Old Republic Ins. Co.*, 223 Ariz. 75, 78, 219 P.3d 285, 288 (Ct. App. 2009). At the time of sale in question, the UMA provided, in relevant part:

> The selection of limits or rejection of [uninsured or underinsured motorist] coverage by a named insured or applicant on a form approved by the director shall be valid for all insureds under the policy. An insurance producer that uses such a form in offering [uninsured or] underinsured motorist coverage and confirming the selection of limits or rejection of coverage by a named insured or applicant satisfies the insurance producer's standard of care in offering and explaining the nature and applicability of [uninsured and] underinsured motorist coverage. A named insured's selection of limits or rejection of [uninsured or] underinsured motorist coverage on a form approved by the director constitutes the final expression of the named insured's decision to purchase or reject [uninsured or] underinsured motorist coverage. The completion of such form is not required where the insured purchases such coverage in an amount equal to the limits for bodily injury or death contained in the policy.

A.R.S. § 20-259.01(B) (2016). The plain terms of the statute initially suggest that confirmation through a DOI form is one way, but not necessarily the only way, that an insurance agent can fulfill her duty to inform the insured concerning the availability and limits of underinsured and uninsured coverage. A producer's use of the form "satisfies the insurance producer's standard of care in offering and explaining the nature and

---

[5] At various points in his Motion, Plaintiff asserts that there "are no genuine issues of material fact with respect to [his] insurance producer malpractice claim" in its entirety but also that he is "entitled to partial summary judgment on the issues of duty and breach" (with no mention of causation and damages). (Doc. 70 at 1.) To the extent Plaintiff moves for summary judgment on not only duty and breach but also causation and damages, these are material fact questions not appropriately resolved at this stage. For instance, the causal question of why Plaintiff did not purchase a higher level of UI/UIM coverage is disputed. Thus, even if Trach did breach her duty, the Court could not say at this stage that that breach was the cause of Plaintiff's damages.

applicability of [uninsured or] underinsured motorist coverage." *Id.* Yet, the statute also states that the "completion of such form is *not required* where the insured purchases such coverage in an amount equal to the limits for bodily injury or death contained in the policy." *Id.* (emphasis added). This could give rise to an inference that the use of the form was otherwise required. However, the legislative history of the 2016 version of the UMA clarifies its intended meaning.

In 2015, the Arizona Supreme Court analyzed a prior version of the UMA in deciding *Wilks v. Manobianco*, 352 P.3d 912 (Ariz. 2015). In *Wilks*, a plaintiff asked her insurance agent to procure insurance with both UM and UIM coverage, but the insurance agent procured insurance lacking UIM coverage. *Id.* at 914. Subsequently, while signing several insurance forms with the agent, the plaintiff signed a DOI form confirming her rejection of UIM coverage. *Id.* After being rear-ended by an underinsured driver, the plaintiff sued the agent for failing to procure the insurance she had requested. *Id.* At that time, as in the 2016 version, the UMA noted that the "rejection of coverage by a named insured or applicant on a form approved by the Department of Insurance director shall be valid for all insureds under the policy," *id.*; however, unlike the 2016 version, it did not mention insurance *agents*, *id.* at 915. Thus, when the agent argued that he had "satisfied [his] duty of care as a matter of law" by obtaining the signed DOI form rejecting UIM coverage, the Arizona Supreme Court disagreed, concluding that the plain language of the 2015 version of the UMA created a "safe harbor" for *insurance companies*, but not agents. *Id.* at 914–915. The court further noted that if the legislature wanted to expand the statute to include agents, it needed to do so clearly. *Id.* at 916.

In response, the Arizona legislature amended the UMA to include the following language:

> An insurance producer that uses [] a [DOI] form in offering uninsured [or underinsured] motorist coverage and confirming the selection of limits or rejection of coverage by a named insured or applicant satisfies the insurance producer's standard of care in offering and explaining the nature and applicability of uninsured [or underinsured] motorist coverage[,]

A.R.S. § 20-259.01(A) (2016), thus "extend[ing] the safe-harbor provisions of A.R.S.

§ 20–259.01 to protect insurance agents"—and not just insurance companies—"who use approved forms to offer and explain UM and UIM coverage," *McArthur v. DeMiguel*, No. 1 CA-CV 16-0225, 2017 WL 4173616, at *2n.2 (Ariz. Ct. App. Sept. 21, 2017).

The amendment's legislative history supports its interpretation as a safe harbor for insurance agents rather than an expansion of their duty of care. Comments made by witnesses during the House Committee on Insurance hearings regarding the amendment demonstrate that both supporters and opponents of the bill considered it to "reinstate [the pre-*Wilks*] objective that [the DOI] form . . . will be evidence that can be used by both the agent *and* the insurance company that [UM/UIM] coverages were offered and the insured rejected them," providing "pure, unadulterated, no questions asked, immunity" for agents. 27 January 2016 House Insurance Committee Hearing on H.B. 2129, Fifty-Second Legislature, Second Regular Session (Ariz. 2016) http://azleg.granicus.com/MediaPlayer.php?view_id=13&clip_id=16493 at 30:10–45, 34:45–35:30. The Senate Fact Sheet specifies that under the amendment,

> an insurance producer satisfies the insurance producer's standard of care in offering and explaining the nature and applicability of uninsured and underinsured motorist coverage, provided that the following occurs:
> a) the insurance producer offers uninsured and underinsured motorist coverage to a named insured or applicant; and
> b) the insurance producer confirms the selection of limits or rejection of coverage by a named insured or applicant on a form that is approved by the Director.

Final Amended Senate Fact Sheet for H.B. 2129, Fifty-Second Legislature, Second Regular Session (Ariz. 2016). The House summary similarly describes the amendment as "assert[ing] an insurance producer's offering of UM/UIM coverage satisfies the insurance producer's standard of care in offering and explaining the nature and applicability of coverage." House Summary Transmitted to Governor for H.B. 2129, Fifty-Second Legislature, Second Regular Session (Ariz. 2016) (Doc. 86 at 58). Neither document describes the UMA as *requiring* an insurance producer to confirm the selection of limits or rejection of coverage through a DOI form; rather, they identify the amendment as providing such confirmation as one method of satisfying the producer's standard of care.

The amendment therefore serves as a safe harbor to both insurance companies and their producers.

In Plaintiff's Reply in support of his Motion for Partial Summary Judgment, he cites the House Summary of the 2019 amendment to the UMA, which states that the 2019 amendment "[r]emoves the requirement for an insurer to confirm the selection or rejection of uninsured and underinsured motorist coverage as a condition for satisfying the insurer's standard of care." House Summary Transmitted to Governor for S.B. 1087, Fifty-Fourth Legislature, First Regular Session (Ariz. 2019). As an initial matter, this summary language, by its nature cursory, does not compel the interpretation that the statutory safe harbor for satisfying the standard of care creates a mandatory standard of care. It thus does not further illuminate the intent of the legislature. As well, Plaintiff did not present this information in his original motion. "As the Ninth Circuit has repeatedly held, where new evidence is submitted for the first time in a reply brief, that evidence may be stricken." *Stickle v. SCI W. Mkt. Support Ctr., L.P.*, No. 08-083-PHX-MHM, 2009 WL 3241790, at *4 (D. Ariz. Sept. 30, 2009). And, in any event, a description of the 2019 amendment to the 2016 UMA is not a contemporaneous discussion of the version of the statute relevant here sufficient to throw any light on the purpose of the legislature that passed it.

As the 2016 version of the UMA did not impose a duty to confirm Plaintiff's selection of mismatched BI and UM/UIM coverage through a DOI Form, Trach's alleged failure to do so was not a breach. Thus, Plaintiff's Motion for Summary Judgment is denied. Moreover, as the above analysis resolves the legal questions Plaintiff seeks to certify to the Arizona Supreme Court,[6] the Motion to Certify is also denied. *See Pfeiffer v. Morgan Stanley Credit Corp.*, 922 F. Supp. 2d 828, 835 (D. Ariz. 2012) ("[T]he decision whether to certify a question to the state supreme court is left to a district court's

---

[6] The questions are: (1) "Does A.R.S. § 20-259.01 establish the standard of care for an insurance producer in offering and explaining the nature and applicability of underinsured motorist coverage?" and (2) "If A.R.S. § 20-259.01 establishes the standard of care for insurance producers, does the statute require an insurance producer to obtain a signed Option Form confirming the selection of limits less than the bodily injury liability limits?" (Doc. 72 at 1.)

1    discretion.").

2    **B.    GEICO's Motion for Partial Summary Judgment**

3       GEICO moves for partial summary judgment on the negligent training and

4 supervision claim arguing that there is "no evidence indicating GEICO failed to properly

5 train or supervise [Trach]." (Doc. 73 at 1.)

6       In Arizona, "[t]he general rule concerning negligent hiring and supervision of

7 employees is found in [§ 213] of the Restatement (Second) of Agency," *Kassman v.*

8 *Busfield Enterprises, Inc.*, 639 P.2d 353, 356 (Ariz. Ct. App. 1981), which states, in

9 relevant part, that an employer can be liable if he is negligent or reckless "in giving

10 improper or ambiguous orders [or] in failing to make proper regulations" or "in the

11 supervision of the activity."[7] However, § 213 is a "special application of the general rules

12 stated in the Restatement of Torts and is not intended to exhaust the ways in which a master

13 or other principal may be negligent in the conduct of his business." Restatement (Second)

14 of Agency § 213 (comment a). Plaintiff suggests a different legal standard, established in

15 *Humana Hospital Desert Valley v. Superior Court of Arizona*, 154 Ariz. 396, 742 P.2d

16 1382 (App. 1987), holding a defendant liable for negligent training and supervision if the

17 defendant employer "knew or should have known that [the defendant employee] was not

18 competent to provide certain care [or complete certain duties] and that the [defendant

19 employer's] failure to supervise the [defendant employee] caused injury to the plaintiff."

20 Contrary to GEICO's suggestion, the *Humana* standard has been "applied . . . to a broader

21 range of circumstances" than simply "lawsuits against hospitals for their non-employee

22 doctors," *Sanchez v. City of Tucson*, No. CV-14-01903-TUC-RMJ, 2016 WL 8669901, at

23 *5 (D. Ariz. Sept. 30, 2016).

24       Yet regardless of the standard applied in this case, Plaintiff has failed to show that

25 GEICO negligently supervised or trained Trach. Arizona courts recognize "the law requires

26 expert testimony when a layman is not competent to judge whether or not a particular

27

28

---

[7] The facts of this case do not stem from "work involving risk of harm to others" or conduct "upon premises or with instrumentalities" under GEICO's control, the other possible sources of liability under the Restatement.

practice is negligent." *Woodward v. Chirco Const. Co., Inc*., 687 P.2d 1275, 1277 (Ariz. Ct. App. 1984). In negligent training and supervision cases, "expert testimony is required as to the care and competence prevalent in the business or profession . . . where the duty arises because the defendant held himself out to be trained in a particular trade or profession, and the negligence is not so grossly apparent that a layman would have no difficulty in recognizing it." *North Star Charter Sch., Inc. v. Valley Protective Servs*., No. 1 CA-CV 15-0549, 2016 WL 7209681 at *5 (Ariz. Ct. App. Mem. Dec. 2016). Here, however, Plaintiff has only produced expert testimony around Trach's failure to meet the standard of care as an insurance producer; Plaintiff's expert does not allege any negligence on *GEICO*'s part. Plaintiff asserts that a jury could "easily compare GEICO's standards with Defendant Trach's testimony to determine whether, under all the circumstances, GEICO provided sufficient training and supervision to ensure its insurance producers knew the standards and, more importantly, were actually complying with those standards when performing their job." (Doc. 83 at 13.) But any such determination would be speculation in the absence of an expert testifying about the standard of care for such training and supervision.

Plaintiff asserts that when GEICO hired Trach, it knew Trach "was not competent to act as a licensed insurance producer" because she "had no prior experience in the insurance industry." (Doc. 83 at 9.) Yet as Plaintiff concedes, "Trach did ultimately become licensed as an insurance producer." *Id.* Then, Plaintiff asserts "Defendant Trach repeatedly exhibited a lack of understanding of the basic knowledge required to do her job" but cites no examples of Trach "exhibit[ing]" this lack of understanding outside of her interaction with Plaintiff and her deposition testimony. *Id.* at 10. Finally, Plaintiff asserts that "[t]he mere fact that GEICO offered some training and occasional performance reviews, does not mean, as a matter of law, that the training and supervision was sufficient," *id.* at 11, but Plaintiff cites no authority for this proposition, and in any event, absent further explanation, it is insufficient to defeat summary judgment. When the gist of the evidence offered by Plaintiff to defeat summary judgment is that GEICO negligently trained and/or supervised

Trach because Trach performed negligently, it provides no factual differentiation between the negligence claim against Trach and a negligent supervision claim against GEICO. To defeat summary judgment, there must be some such evidence. Such an argument fails to point to any evidence, expert or otherwise, that GEICO was negligent in its supervision of Trach.

GEICO's alleged negligent training and supervision is "not so grossly apparent that a layman would have no difficulty in recognizing it." *North Star*, 2016 WL 7209681 at *5. A jury cannot resort to "speculation"—it is "permitted to draw only those inferences of which the evidence is reasonably susceptible." *Program Eng'g, Inc. v. Triangle Publications, Inc.*, 634 F.2d 1188, 1194 (9th Cir. 1980) As Plaintiff's negligent training and supervision claim hinges on "allegation and speculation," it cannot therefore "create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). GEICO's Motion for Partial Summary Judgment is granted.

**CONCLUSION**

As the 2016 version of the UMA did not impose a duty to confirm Plaintiff's selection of mismatched BI and UM/UIM coverage through a DOI Form, Trach's alleged failure to do so was not a breach. On the issue of negligent supervision and training, Plaintiff has not alleged sufficient evidence that GEICO breached the standard of care to avoid speculation by a jury.

**IT IS THEREFORE ORDERED** that Plaintiff Justin Bogus's Motion for Partial Summary Judgment (Doc. 70) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Justin Bogus's Motion to Certify Questions of Law to the Arizona Supreme Court (Doc. 72) is **DENIED**.

/ / /

/ / /

/ / /

/ / /

/ / /

1
2
3
4
    **IT IS FURTHER ORDERED** that Defendant GEICO Indemnity Company's Motion for Partial Summary Judgment (Doc. 73) is **GRANTED** and all claims asserted against Defendant GEICO Indemnity Company are dismissed and Defendant Geico is terminated from this action.

5
    Dated this 23rd day of June, 2020.

6
7
8
G. Murray Snow
Chief United States District Judge

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28